UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KIMBERLY D. FLECK, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 5:19-cv-00878-ACA |
| } | |
| ANDREW SAUL, } | |
| COMMISSIONER OF SOCIAL } | |
| SECURITY ADMINISTRATION, } | |
| } | |
| Defendant. } | |

### MEMORANDUM OPINION

Plaintiff Kimberly Fleck appeals the decision of the Commissioner of Social Security terminating her disability benefits. Based on the court's review of the administrative record and the parties' briefs, the court **AFFIRMS** the Commissioner's decision.

### I.   PROCEDURAL HISTORY

In 2004, Plaintiff Kimberly Fleck ("Ms. Fleck") applied for a period of disability and disability insurance benefits. (R. 204-07). An Administrative Law Judge ("ALJ") issued a fully favorable decision in September 2006, finding Ms.

Fleck disabled beginning on November 1, 2003 due to breast cancer. (*Id.* at 86-92). The ALJ awarded Ms. Fleck disability benefits. (*Id.*).

In 2010, the Social Security Administration ("SSA") conducted a continuing disability review to determine whether Ms. Fleck had experienced medical improvement. (R. 102-06). After review, the Commissioner found that the "medical evidence shows that [Ms. Fleck's] condition has improved since [her] last favorable decision." (*Id.*). The Commissioner determined that Ms. Fleck's disability ended on December 1, 2010. (R. 102-06). In making that determination, the Commissioner considered impairments Ms. Fleck suffered from that were unrelated to breast cancer, and diagnosed subsequent to her initial determination of benefits.[1] (*Id.*).

Ms. Fleck requested a hearing before an ALJ, who in 2014, determined that Ms. Fleck's disability had, in fact, ceased on December 1, 2010 because Ms. Fleck remained "cancer free." (*Id.* at 12-35). Although the ALJ noted that Ms. Fleck had several additional impairments as of December 1, 2010,[2] the ALJ concluded that Ms. Fleck was not disabled. (*Id.*). Ms. Fleck then sought review by the Appeals Council, which denied Ms. Fleck's request for review. (R. 1-6). Thereafter, Ms. Fleck

---

[1] In fact, the review incorrectly stated that Ms. Fleck was found disabled in 2003 due to "lymphedema in the right arm, right shoulder pain, finger joint [sic] pain, autoimmune disorder, scleroderma and lupus." (R. at 103).

[2] The ALJ found that Ms. Fleck had the following medically determinable impairments: degenerative disc disease of the cervical spine, systemic lupus erythematosus (SLE), dry eye, gastroesophageal reflux disease (GERD), hypothyroidism, hyperlipoproteinemia, obstructive sleep apnea (OSA), and anxiety. (R. 17).

appealed to this court, where she raised the issue that the ALJ failed to properly account for malaise. (R. 1862-75). This court reversed and remanded the case to the Commissioner to determine whether Ms. Fleck's complaints of malaise qualified her as disabled under Listing 14.02. (*Id.*; *see Fleck v. Comm'r of Soc. Sec.*, No. 5:15-cv-1293-MHH, 2016 WL 8671769, at *4 (N.D. Ala. Sept. 30, 2016) (Haikala, J.)).

On remand, the Appeals Council vacated the Commissioner's final decision terminating Ms. Fleck's benefits, and remanded the case to an ALJ for further proceedings consistent with the district court's order. (*Id*. at 1876-80). Following a hearing, the ALJ issued a decision on October 26, 2017, finding that Ms. Fleck was not disabled as of December 1, 2010. (*Id*. at 1790-1817). In April 2019, the Appeals Council denied Ms. Fleck's request for review, making the ALJ's October 26, 2017 decision the final decision of the Commissioner. (R. 1783-89). The decision is now ripe for the court's judicial review. *See* 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks and citation omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there is 'such relevant evidence as a reasonable person would

accept as adequate to support a conclusion.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks and citation omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks and citation omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. THE ALJ'S OCTOBER 26, 2017 DECISION

To determine whether a claimant continues to be disabled, an ALJ follows an eight-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is engaging in substantial gainful activity; (2) if not, whether the claimant has an impairment or combination of impairments that meet or equal a listed impairment; (3) if not, whether there has been medical improvement; (4) if so, whether the improvement is related to the claimant's ability to work; (5) if there is no medical improvement or if medical improvement is not related to the claimant's ability to work, whether an exception to medical improvement applies; (6) if there is medical improvement related to the

4

claimant's ability to work or if an exception applies, whether the claimant has a severe impairment; (7) if so, whether the claimant can perform his past relevant work; and (8) if not, whether the claimant can perform other work.

*Klaes v. Comm'r Soc. Sec.*, 499 F. App'x 895, 896 (11th Cir. 2012) (citing 20 C.F.R. § 404.1594(f)(1)-(8)).

At step one, the ALJ determined that Ms. Fleck had not engaged in substantial gainful activity. (R. at 1795). At step two, the ALJ found that since December 1, 2010, Ms. Fleck suffered from the following medically determinable impairments: degenerative disc disease of the cervical spine, degenerative joint disease, and systemic lupus erythematosus. (*Id*.). The ALJ concluded that these impairments did not meet or medically equal the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 1796).

At step three, the ALJ determined that Ms. Fleck experienced medical improvement as of December 1, 2010 because she is cancer-free. (R. at 1796). At step four, the ALJ found that Ms. Fleck's medical improvement related to her ability to work. (*Id.* at 1797). Because the ALJ found that Ms. Fleck's medical improvement is related to her ability to work, the ALJ skipped step five and found at step six that Ms. Fleck continued to have a severe impairment or combination of impairments. (*Id*.). Specifically, the ALJ concluded that Ms. Fleck suffers from the following severe impairments: degenerative disc disease of the cervical spine; degenerative joint disease with a history of rotator cuff surgery; and systematic lupus

5

erythematosus.  (*Id.*).  The ALJ also concluded that Ms. Fleck suffers from the following non-severe impairments: dry eye, gastroesophageal reflux disease, hypothyroidism, hyperlipoproteinemia, obstructive sleep apnea, and anxiety.  (*Id.*). Based on these impairments, the ALJ found that Ms. Fleck has the residual functional capacity to perform light work with a number of postural and environmental limitations.  (*Id*. at 1801).

At step seven, the ALJ determined that Ms. Fleck has no past relevant work. (*Id*. at 1805).  At step eight, the ALJ found that Ms. Fleck can perform a significant number of jobs in the national economy, including cashier, furniture rental clerk, and information clerk.  (R. at 1805-06).  Accordingly, the ALJ determined that Ms. Fleck's disability ended as of December 1, 2010, and that Ms. Fleck had not become disabled again since that date.  (*Id*. at 1806).

## IV.  DISCUSSION

On appeal, Ms. Fleck presents three arguments: that the ALJ (1) failed to consider the combination of Ms. Fleck's impairments; (2) improperly discounted both Ms. Fleck's subjective testimony and credibility; and, (3) improperly relied on testimony that a vocational expert gave in response to a hypothetical question that did not include all her limitations.  (Doc. 13 at 7-9, 11, 12, 16, 19, 22-24, 27).  The court addresses each issue in turn.

1. Combination of Impairments

Ms. Fleck argues that the ALJ failed to evaluate Ms. Fleck as a "whole person" in assessing her impairment of lupus. (Doc. 13 at 7 (citing *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993)). Ms. Fleck argues that "lupus affects many different body systems sometimes at once but also at different times for different body systems." (Doc. 13 at 6). Ms. Fleck contends that the ALJ did not "acknowledge the body system causing the symptoms suffered by [Ms. Fleck]," and therefore, contends that the ALJ "violated the rule of viewing the body as a whole" as set forth in *Davis*. (*Id*. at 7). The court disagrees.

Contrary to Ms. Fleck's argument, the ALJ properly evaluated Ms. Fleck as a "whole person" in assessing Ms. Fleck's combination of impairments. An ALJ has a duty to make "specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." *Davis*, 985 F.2d at 534 (citing *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987)); *see also Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir.1986). Notably, an ALJ must evaluate the "whole person," rather than "evaluate claimants as persons with mere hypothetical and isolated illnesses." *Id*.

Upon review, the ALJ stated that Ms. Fleck "has not had an impairment or combination of impairments that met or medically equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App'x 1." (R. 1796). The ALJ also stated that she assessed Ms.

Fleck's residual functional capacity ("RFC") "based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments."  (R. 1801).  These statements, coupled with the ALJ's finding that she considered "all symptoms" when determining Ms. Fleck's RFC, sufficiently evidence that the ALJ considered the combined effect of Ms. Fleck's impairments, and thus, properly evaluated Ms. Fleck as a "whole person."  (*Id.*; *see Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)).

Moreover, Ms. Fleck's argument that the ALJ failed to "acknowledge the body system causing the symptoms suffered" is inaccurate.  (Doc. 20 at 7).  As a factual matter, the ALJ discussed many of the symptoms, organs, and body systems that Ms. Fleck asserted were overlooked.  *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.00(D). *See also Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 952 (11th Cir. 2014) (noting that the ALJ went beyond the required statements that show consideration of combination of impairments by discussing specific evidence).

As to Ms. Fleck's respiratory system, the ALJ noted that Ms. Fleck reported trouble breathing and tightness in her chest.  (R. 1800).  Laboratory findings, however, were "normal."  (*Id.*).  Records from September 2012 indicated that Ms. Fleck had no respiratory distress, and was "stable."  (*Id*. at 1801).  As to Ms. Fleck's cardiovascular system, the ALJ discussed records from Dr. Jampala, noting that Ms.

8

Fleck's recent heart and pulmonary examinations were normal, along with records where she reported no chest pain or palpitations. (*Id*. at 1800).

While Ms. Fleck alleged a neuropathy disorder, the ALJ found that nerve conduction/electromyography testing was normal, and there simply was "no evidence of record to support" Ms. Fleck's complaints. (R. 1797). The ALJ extensively discussed allegations of mental impairments. Notably, the ALJ considered the severity of Ms. Fleck's mental impairments, including whether "paragraph B" and "paragraph C" criteria were satisfied; the record did not support a finding that Plaintiff satisfied the criteria. (*Id*. at 1797-99). The ALJ also discussed mood, skin, and immune system disorders (inflammatory arthritis). (*Id*. at 1800). For example, ALJ noted that Dr. Jampala initially reported active inflammatory arthritis, yet after her medications were adjusted, there was no suggestion that Ms. Fleck's impairments were significantly limiting her functioning. (*Id*.).

Ms. Fleck generally discusses medical records indicating that Ms. Fleck suffered from fatigue and malaise, presumably continuing the argument that the ALJ did not consider the entirety of Ms. Fleck's symptoms. (Doc. 13 at 25-27). The court notes that the district court previously remanded the case for further consideration of Ms. Fleck's impairment of malaise, *see Fleck*, No. 5:15-cv-1293-MHH, 2016 WL 8671769, at *4, but Ms. Fleck does not raise the issue presently. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A]

9

legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."); *accord Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (quotation marks omitted) ("[A]n appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.").[3] Thus, the record demonstrates that the ALJ properly considered the entirety of Ms. Fleck's symptoms, in light of the reasonable, objective medical evidence.

### 2. Subjective Testimony and Credibility

Ms. Fleck contends that the ALJ erred in applying the Eleventh Circuit's pain standard because her testimony about the numerous instances of pain she suffers is consistent with and supported by objective medical evidence. (Doc. 13 at 7-9, 11, 12, 16, 19, 22-24). Under Eleventh Circuit precedent, a claimant attempting to establish disability through testimony of pain or other subjective symptoms must show evidence of an underlying medical condition and either (1) "objective medical evidence that confirms the severity of the alleged pain arising from that condition"

---

[3] Even assuming, arguendo, that Ms. Fleck raised the issue pertaining to malaise, the court finds the ALJ properly considered the entirety of lupus symptoms. In the 2016 opinion, District Judge Madeline Hughes Haikala found that court could not determine whether the ALJ's decision was supported by substantial evidence because the ALJ failed to "account for certain diagnoses and reported symptoms that support Ms. Fleck's arguments concerning her impairment of lupus." (R. 1865.) Here, no such error is present. Because the ALJ considered the symptoms, organs, and body systems relating to Ms. Fleck's impairment of lupus, substantial evidence supports the ALJ's decision.

or (2) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted). The Commissioner acknowledges that Ms. Fleck established impairments that could reasonably be expected to produce her alleged symptoms. (Doc. 17 at 16). Thus, the only question before the court is whether substantial evidence supports the ALJ's determination that Ms. Fleck's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 14-15).

The ALJ notes that Ms. Fleck alleges she cannot work due to chronic, debilitating pain, fatigue, and dysfunction with dizziness and headaches. (R. 1802). The ALJ highlighted, however, that in 2016, Dr. Elisa Haley of Whiteside Family Medicine encouraged Ms. Fleck to work, specifically urging that she "attempt sitting jobs, such as a call center . . ." (*Id.* at 1803). Notably, Dr. Haley referenced Dr. Jampala's treatment notes from 2014, indicating that Ms. Fleck "appeared overall stable." (*Id.*). The ALJ also considered a letter prepared by Dr. Haley in 2011, noting that Ms. Fleck was doing well on her medications. (*Id.*). The ALJ noted that

Ms. Fleck stopped medications for lupus in April 2012, and in June 2017, Dr. Jampala found "no active lupus."[4]  (*Id*. at 1801).

Ms. Fleck testified that she is not able to use her hands by bending her fingers for up to 12 hours a day.  (Doc. 13 at 8; R. 1835).  The ALJ, however, considered records from Dr. Myers at Vanderbilt University Medical Center Rheumatology Clinic that found Ms. Fleck's muscle strength was 5/5 in all extremities, and that she had full fist closure.  (R. 1800).  Rheumatology records from 2012 also reported no swelling in her shoulders, elbows, wrists, or fingers.  (*Id*. at 1801).  Similarly, Ms. Fleck takes issue with the ALJ's findings regarding Ms. Fleck's shoulder and arm complaints.  (Doc. 13 at 10-11).  However, the ALJ's analysis considered records from Dr. Jampala showing that Ms. Fleck's musculoskeletal examination showed no swelling, no loss of motion, and normal motor function.  (R. 1796).

Ms. Fleck further testified that she must stay on a couch for eight hours a day, suffers from diarrhea five days a week, gets dizzy eight times a day, and has a headache 12 to 14 hours a day every day.  (*Id*. at 1802).  In direct contrast to Ms. Fleck's complaints, the ALJ listed the wide range of daily activities Ms. Fleck

---

[4] Ms. Fleck appears to fault the ALJ for considering Dr. Jampala's office notes from 2016 and 2017, as opposed to the records closer to the date of termination of benefits in December 2010. (Doc. 13 at 6).  Records from 2016 and 2017, however, are certainly relevant in determining that Ms. Fleck was not disabled as of September 2017.  *See Solomon v. Comm'r, Soc. Sec. Admin.*, 532 F. App'x 837, 838 (11th Cir. 2013) (to terminate benefits, the Commissioner must "evaluate the medical evidence upon which [the claimant] was originally found to be disabled," but also may focus on current evidence of disability).

engaged in. (*Id.* at 1804). A consultative physical examination performed by Dr. Marlin Gill in 2010 showed that Ms. Fleck engaged light house cleaning, laundry, cooking, and washing dishes. (*Id.*). She drove and went to the grocery store, and also reported that she rode her bicycle 5 miles daily for exercise. (*Id.*). While her shoulder was tender, she could raise it in forward and backward directions to 100 degrees. (*Id.*). She had a full range of motion in the joints, and was neurovascularly intact. (*Id.*). Moreover, Dr. Gill provided she could sit, stand, and walk with no specific limitations. (*Id.*).

The ALJ properly found that Ms. Fleck's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence and other evidence in the record. (R. 1802). In making that determination, the ALJ reviewed and summarized all of the medical evidence that had been submitted, none of which confirmed Ms. Fleck's level of alleged pain. (*Id.*). In making the credibility determination, the ALJ's extensive discussion of the medical evidence was sufficient to enable the court "to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Given that credibility determination, substantial evidence supports the ALJ's conclusion that Ms. Fleck's subjective testimony did not satisfy the "pain standard." Accordingly, Ms. Fleck's subjective descriptions of pain and other symptoms, absent objective medical evidence, is not enough to establish

disability. *See* 42 U.S.C. Section 423(d)(5)(A); *see also* Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *2.

Contrary to Ms. Fleck's assertion, the ALJ properly considered the statements of Ms. Fleck's daughter, Candice Rea. (Doc. 13 at 24; R. 118). Ms. Rea testified that Ms. Fleck was easily fatigued, lacked energy to do daily tasks, was unable to handle stress, and could not drive. (R. 118). While the ALJ may consider evidence from sources "other" than acceptable medical sources to show the severity of a claimant's impairments, Ms. Rea's statements were not due any special significance or consideration. *See* 20 C.F.R. §§ 404.1502, 404.1513(a); *see also Szilvasi v. Comm'r of Soc. Sec.*, 555 F. App'x 898, 901 (11th Cir. 2014) (noting evidence could not establish the existence of a medical impairment because source was "not a physician."). The ALJ is not generally required to articulate specific reasons for discounting opinions from other sources. *See* 20 C.F.R. § 404.1527(f)(2).

Additionally, Ms. Fleck cites *Tieniber v. Heckler* for the proposition that the ALJ was required to determine whether Ms. Rea's statements were credible. (Doc. 13 at 24 (citing *Tieniber*, 720 F.2d 1251, 1255 (11th Cir. 1983)). The Commissioner correctly points out that Ms. Rea's statements are distinguishable from the testimony in *Tieniber*. (Doc. 17 at 18). Here, unlike in *Tieniber*, testimony from Ms. Rea and Ms. Fleck were not the only pieces of evidence produced from the disabling period. *See Tieniber*, 720 F.2d at 1254. The ALJ considered other evidence, including the

third-party function report of Ms. Fleck's father-in-law, Ms. Fleck's own testimony, and medical records from Drs. Kumar, Fambrough, Beck, Jampala, Myers, and Haley. (R. 1797-1805). Because other evidence supports the ALJ's determination, the ALJ's failure to make any credibility determination with respect to third-party testimony was not reversible error. *See Taylor v. Comm'r of Soc. Sec.*, 213 F. App'x 778, 779-80 (11th Cir. 2006). Thus, the ALJ did not err by assigning specific weight to Ms. Rea's testimony.

### 3. Vocational Expert Hypothetical

Ms. Fleck appears to argue that the ALJ improperly relied on testimony that a vocational expert gave in response to a hypothetical question that did not include all her limitations associated with her dry eye condition, particularly the need to apply warm compresses during the workday. (Doc. 13 at 14-15; 27-28). The court disagrees.

"When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240. "In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). But an ALJ is

not required to include findings in a hypothetical question that the ALJ properly rejects as unsupported. *Crawford*, 363 F.3d at 1161. When questioning the vocational expert during the administrative hearing, the ALJ posed the following hypothetical:

> Let's assume we have a hypothetical individual with claimant's education, training and work expert. He will be Mr. Alpha. He would be limited to a full range of light work as that term is defined under the regulations. Limited to frequent postural maneuvers, except only occasional crawling, no climbing of ropes, ladders or scaffolds, occasional overhead reaching with the right upper extremity, would need to avoid concentrated cold temperature extremes or extreme vibration, avoid more than occasional exposure to direct sunlight and avoid dangerous moving unguarded machinery or unprotected heights.
>
> . . .
>
> Are there any jobs in the national economy that a person with those limitations could perform?

(R. 1854). In response, the vocational expert testified that the hypothetical person could perform counter clerk, cashier, and furniture rental clerk jobs. (*Id.*).

> The ALJ asked the vocational expert a second hypothetical:
>
> Let's assume that we have a second hypothetical individual with the claimant's education, training and work experience, who will be Mr. Beta. He would have the same limitations as Mr. Alpha except that he must be afforded the option to sit or stand during the workday one or two minutes every hour or so just to change position. Are there any jobs in the national economy that a person with those limitations could perform?

16

(R. 1855). The vocational expert testified that the cashier and rental clerk jobs would remain, but would reduce the numbers of jobs available. (*Id.*). The vocational expert added that the hypothetical person could perform work as an information clerk. (*Id.*).

In her decision, the ALJ adopted the vocational expert's testimony with respect to the first hypothetical question and concluded that based on Ms. Fleck's RFC, jobs exist in the national economy that she can perform. (R. 1801). Contrary to Ms. Fleck's assertion, the ALJ's hypothetical to the vocational expert accounted for limitations on Ms. Fleck's ability to work due to her dry eye condition. Specifically, the ALJ found, in relevant part:

> Ms. Fleck had the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except . . . she must be afforded the option to sit or stand during the workday one or two minutes every hour or so just to change position [and] . . . must avoid more than occasional exposure to direct sunlight.

(R. 1801). The option to sit or stand provides Ms. Fleck an opportunity to place warm compresses on her eyes as directed by Dr. Estopinal, while the avoidance of sunlight is compatible with Dr. Estopinal's recommendation to wear sunglasses. (R. 1700-07, 1728).

Moreover, with respect to Ms. Fleck's allegation that the nature of dry eye impairment was more severe than the ALJ found, the ALJ previously considered the relevant medical evidence, and determined the dry eye to be a non-severe

17

impairment.[5] (R. 1797). Ms. Fleck testified at the 2017 hearing that she had to apply warm compresses four to six times per day for twenty minutes each. Records from Dr. Estopinal, however, show that she recommended warm compresses for "3-5 minutes," along with the use prescription lenses to correct vision problems. (R. 1728; R. 1797). Thus, the ALJ properly determined that Ms. Fleck's testimony was not consistent with the record evidence. Therefore, the ALJ was not required to include findings in the hypothetical that the ALJ had rejected as unsupported. *See Crawford*, 363 F.3d at 1161.

---

[5] To the extent Ms. Fleck takes issue with the ALJ's finding of Ms. Fleck's dry eye as a non-severe impairment, (*see* doc. 13 at 12-15), the ALJ could not have committed error at this step of the sequential evaluation because the ALJ found Ms. Fleck had severe impairments and continued to the subsequent steps of the sequential evaluation. (R. 1797). *See Council v. Barnhart*, 127 F. App'x 473, No. 04-13128, at *4 (11th Cir. Dec. 2004) (stating that "the ALJ could not have committed any error at step two because he found that [the claimant] had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two.").

## V. CONCLUSION

For the reasons explained above, the court concludes that the Commissioner's decision is supported by substantial evidence, and the Commissioner applied proper legal standards in reaching the determination. Therefore, the Court **AFFIRMS** the Commissioner's final decision. The Court will enter a separate order consistent with this memorandum opinion.

    **DONE** and **ORDERED** this May 29, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE